BIAGGI v. THE ESTATE OF VIVONI.

APPEAL from the District Court of Mayagüez.

No. 16.—Decided June 30, 1906.

ATTORNEY FEES.—From the evidence introduced in this case it does not appear that the plaintiff has a right to recover the amount demanded as fees for professional services, and therefore the judgment rendered must be reversed and the complaint dismissed with costs.

The facts are stated in the opinion.
*Mr. Juan Vías Ochoteco* for appellant.
*Mr. Antonio Alvarez Nava* for respondents.

Mr. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

On August 25, 1905, Attorney Robustiano Biaggi filed the complaint which originated the above-mentioned cause, in the District Court of Mayagüez, against José Antonio, Pedro Tomás, Tomás, Emilio and Alfredo Vivoni, all brothers, for the recovery of 750 *pesos* for professional services earned and due him in the declaratory action which had been prosecuted against them by their sister Soledad, the wife of José Romero, who attacked the accounts of the partition of the Estate of Pedro S. Vivoni, and in the compromise reached among them, in which matter he had taken part and worked in conjunction with Attorney Otto Schoenrich.

The facts upon which the complaint is based are the following:

"First. That at the instance and on behalf of José Antonio Vivoni, in his own right and as the attorney in fact of his mother, he instituted intestate proceedings in said court with relation to the Estate of Pedro S. Vivoni y Battistini, and after they had been prosecuted through all their stages, he was appointed commissioner of partition and division at the general meeting held for the purpose.

"Second. That in compliance with his trust he made the proper operations, the sum of 4,000 *pesos* being set aside for the payment of the attending expenses, to be deducted from the common estate.

"Third. That the partition made having been submitted for approval to the court, Soledad Vivoni, one of the parties interested, objected, and brought an action against the other heirs and the widow, contesting said partition upon the grounds set forth by her.

"Fourth. That this complaint was demurred to by the defendants under the direction of the distinguished attorney, Mr. Otto Schoenrich, as counsel for the widow, and by the plaintiff, as counsel for the other defendants, both counsel filing all the motions and taking all steps required in the matter by common agreement.

"Fifth. That before the trial a compromise was sought by the parties, through their respective counsel; and the latter, prompted by the best wishes to terminate the litigation in his family, after a number of interviews, discussions and reasoning of a private character, a final agreement was reached which put an end to the litigation.

"Sixth. That while the litigation was pending, he was asked on a number of occasions by the Vivoni brothers the amount which he and Mr. Schoenrich intended to charge them as fees. In so far as the plaintiff was concerned, he agreed on a specific sum as the fees for the intestate proceedings and as commissioner of partition and division, including all the expenses incurred, he having still to receive only 100 *pesos*, because the difference had been paid him at various dates and in partial sums.

"With regard to the litigation and the fees of Mr. Otto Schoenrich, the sum of $500 was agreed on up to that date, and $1,000 if the litigation were continued until it reached the Supreme Court, which sum included the fees of the complainant.

"Seventh. That he left a letter with José Antonio Vivoni with regard to this agreement, and when he received the 100 *pesos* he gave him the proper receipt in full; and subsequently, the said defendants paid on different occasions $250 on account of the $500 at which the fees for the litigation had been fixed, consequently leaving $250 still due.

"Eighth. Upon the compromise referred to being reached, when Mr. Otto Schoenrich went away from the city, he left with the plaintiff a letter for Tomás Vivoni, fixing the sum of $1,500 as the fees of both lawyers in the compromise, and authorizing the plaintiff to collect this sum, together with $250 remaining from the litigation, making a total of $1,750 payable by the estate they represented.

"Ninth. That on the morning train on which Mr. Schoenrich left for the capital, Tomás Vivoni arrived from San Germán, and on the trip from the station of the town to the playa, they arranged the fees due Schoenrich for his services, Messrs. Vivoni paying the sum of $750, while aforesaid Tomás engaged to settle for those of the plaintiff, which agreement was reached at the time and confirmed by Tomás in a letter addressed to Mr. Schoenrich.

"Tenth. That without having any knowledge of this arrangement, he went to San Germán two days later to the house of Messrs. Vivoni to collect the $1,750 with the letter referred to in the eighth statement of fact, and Tomás told him that everything had been paid, that nothing was owed, and that he had nothing more to pay, leaving him in an awkward position, little in accord with the consideration which should have been shown him.

"Eleventh. That upon his return from Mayagüez, he wrote at once to Mr. Schoenrich, informing him of the statement made by Tomás, and it was then that he ascertained from the answers sent him by the said attorney at law what had occurred on the train, as set forth in

the ninth statement of fact, with respect to the fees of the plaintiff, so that as he could in no way doubt the sincerity of these answers, especially when he knows that Mr. Schoenrich had written a number of letters to Messrs. Vivoni upon the matter explaining the state of the fees of the petitioner and their independence from his own, he could only believe that the defendants desired to have these fees which had been earned in the action and the compromise by the plaintiff to be understood as included in the balance given him for his fees in the testamentary proceedings as attorney and as commissioner for partition and division despite their insignificance in relation to the time said work had lasted, the extent of the estate, the fact that he went in person to the various inclosures of the estates with the experts in order to appraise individually more than 600 head of cattle, in the sun and under the worst conditions possible, receiving in compensation some unexpected and gratuitous slights by which said gentlemen had attempted to affront him.

"Twelfth. That he therefore sought to recover in his complaint $250 due him as one-half of the fees of the litigation, and $500 for the compromise.

"Thirteenth. And that as he has been unable to obtain any satisfaction by any other means and has been openly repulsed by the defendants, he prays the court to render judgment against the defendants and adjudge them to pay the sum prayed for and costs."

The defendants answered the complaint denying in general terms that they owed the plaintiff anything, alleging that he had received from the defendants the sum of $1,650.33 in full settlement of his exorbitant fees in the matter referred to in the complaint; for which reason they concluded in their turn with the prayer to the court that it dismiss the complaint, giving judgment in favor of the defendants, with the costs against the plaintiff.

The trial having been held and the evidence presented by both parties, consisting of a large number of letters and depositions of witnesses, the District Court of Mayagüez rendered the following judgment:

"On December 18, 1905, this cause was called for trial in its order on the calendar. The parties appeared, the plaintiff on his own behalf, and the defendant through his counsel, Attorney Benito Forés,

and announced that they were ready for trial. The court, after having heard the evidence and the allegations of the parties, reserved judgment until this 2d day of January, 1906, and now holds that the law and the facts are in favor of the plaintiff, and, therefore, orders and decrees that the latter recover and obtain from the defendants, the sum claimed, amounting to $750, as compensation for professional services rendered by the plaintiff to the defendants, and the costs being taxed against the latter; and that execution issue against the property of the defendants for the satisfaction of this judgment.—Isidoro Soto Nussa. Attest: Franco Llabat, secretary."

The defendants took an appeal from this judgment, and the transcript of the record having been received in this Supreme Court together with a copy of the statement of facts presented by the appellants and approved by the judge of the court, with the amendments and additions proposed by the adverse party, and the appellants having filed a brief, the hearing was had with the attendance of counsel for the parties.

Now then, considering the evidence presented at the trial as a whole, we do not find the right of Mr. Biaggi to claim the payment of $750 referred to in his complaint as fees for professional services which he alleges to have rendered Messrs. Vivoni, has been established; in the first place, because said Biaggi himself, having acknowledged that he made an agreement for all the work connected with the testamentary proceedings of the deceased father and predecessor in interest of the defendants, Pedro Santos Vivoni, for the lump sum of 4,000 *pesos,* to their final determination, it appears logical that this sum included the fees earned in the litigation to which the plaintiff refers—that is to say, the action brought by Soledad Vivoni de Romero, as one of the participants in the estate of her deceased father, Pedro, objecting to the testamentary operations of Biaggi, which action must be considered as incidental to the testamentary proceedings—and, in the second place, because even if this were not so, and the objection by Soledad to the division made were to be considered as an action separate and independent from the testamentary proceedings, Mr. Biaggi, instead of having proved that Messrs.

Vivoni were in any way bound to pay him the fees which might accrue from this action, has shown exactly the contrary, namely, that Messrs. Vivoni had absolutely repudiated any settlement whatsoever in this respect, as shown by the letter addressed to him by Mr. Vivoni on March 13 of last year, which appears at folio 21 of the record. In this letter, after stating that he had paid Antonio Sánchez the hundred dollars referred to in his order of the 5th of said month of March as the balance of his fees, he added the following: "But I must remind you that the sum paid to you as fees is understood to cover the entire termination of the Romero matter, as you, Pedro and myself agreed months ago—that is to say, that we have nothing more to pay you for any work that you may have to do in said matter. Remember that the agreement we made some days since, referred to in the letter which you wrote to José Antonio applied only to the fees of Mr. Schoenrich, whom you will have to see. It is better to have everything clear in order to avoid differences, for which reason I make these observations. If we reach a compromise, and it should become necessary to present some writing to the court, it will be your duty to do so, without the necessity of the intervention of Mr. Schoenrich—that is to say, without our being obliged to pay Mr. Schoenrich anything." The plaintiff, Biaggi, agreed to this when he informed Mr. Vivoni in his answer of the same date (folio 28 of the record) : "That he accepted the contents of his letter, which stated exactly the agreement made and accepted by Mr. Schoenrich in his letter to José Antonio of the preceding 20th of February; that both had worked together in filing the motions in court and had an agreement as to fees, in the terms set forth in said letter; and that he earnestly hoped that a suitable arrangement might be reached with Solita."

The letter of February 20, to which Biaggi refers in his answer to Tomás, is that which appears at folio 26 of the record, in which letter Biaggi informed José Antonio, the brother of the former, that according to the agreement made with

Tomasito, on behalf of all the persons interested, only $100 remained due him, including all the expenses which he had defrayed from his own pocket in the testamentary proceedings relating to the Estate of Don Pedro; that Mr. Schoenrich was their creditor for fees to the extent of $500, but that if the action pending with Soledad continued to its termination in the courts, without any costs or fees in the proceedings, which would be defrayed by the defendants, then the fees of Mr. Schoenrich might be estimated at $1,000 with the understanding that in referring to Mr. Schoenrich, the fees of Mr. Biaggi in all these proceedings were also included.

Mr. Biaggi, therefore, has no cause of action for the recovery of fees from the Vivoni brothers, which fees he alleges he earned in the litigation in question, instituted by Soledad Vivoni de Romero against the other persons interested in the estate of her deceased father, involving an objection to the partition made by the plaintiff himself. This action, almost immediately after its institution, was terminated by a compromise between the persons interested, in which the principal, if not the only, part was taken by Attorney Schoenrich, who was in this capital and who settled the bases of the agreement, after long conferences and deliberations with counsel for the adverse party, until the matter was concluded. This is shown by the large number of letters and telegrams addressed from this city by Mr. Schoenrich to Messrs. Vivoni, copies of which are of record, and especially the text itself of the compromise agreed on, which is signed exclusively by Mr. Schoenrich, as the only attorney and representative of Messrs. Vivoni. This corroborates and confirms the statements and allegations of the defendants in this action to the effect that they had entrusted their representation in these arrangements to Mr. Schoenrich alone, absolutely ignoring Mr. Biaggi; and under these circumstances we are forced to the conclusion that as Mr. Biaggi has not proved that the $750 which he claims of Messrs. Vivoni were owed him, the judgment rendered by the District Court of Mayagüez on December 18, 1905, should be

reversed, and judgment rendered in favor of the brothers, Antonio, Pedro Tomás, Tomás, Emilio and Alfredo Vivoni, with the costs of both instances against the plaintiff, Robustiano Biaggi.

*Reversed.*

Justices Hernández, Figueras, MacLeary and Wolf concurred.